FILED
DECEMBER 3, 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

07 C 6778

JUDGE MORAN
MAGISTRATE JUDGE DENLOW

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROCCO MORELLI<br><br>Plaintiff,<br><br>vs.<br><br>MEDWAVE, INC., a corporation, and FRANK KATAROW, an individual<br><br>Defendants. | Case No.<br>Judge<br>Magistrate |

**COMPLAINT**

**INTRODUCTION**

1. Defendants induced Mr. Morelli to remain employed by Medwave by promising him certain severance pay benefits so that he would negotiate the sale of the company. After Mr. Morelli performed his duties and negotiated with a party interested in purchasing the assets of the Company, Defendant Katarow, for reasons personal to him, informed Mr. Morelli that the company would not pay the promised severance benefits. Defendants engaged in a scheme to avoid their liability to pay severance benefits and to protect their personal interests, which ultimately ended in Mr. Morelli's termination from Medwave's employment.

**Jurisdiction and Venue**

2. This Court has jurisdiction over these violations pursuant to 28 U.S.C. §1332.

3. Venue is appropriate pursuant to 28 U.S.C. §1932(a)(2).

4. Plaintiff Rocco Morelli is an Illinois resident and citizen.

5. Defendant Medwave, Inc. ("Medwave") is incorporated under the laws of Delaware, with its principal place of business at 4382 round Lake Road West, Arden Hills, Minnesota 55112.

6. Defendant Frank Katarow is an individual who is a Wisconsin resident and citizen. At all times relevant to this lawsuit, Mr. Katarow was the Chief Executive Officer for Medwave.

7. In response to solicitation by Mr. Katarow to leave employment with his prior employer, Mr. Morelli accepted employment with Medwave. On October 16, 2006, Mr. Morelli began employment with Medwave as its Senior Vice President of Sales and Marketing. Mr. Katarow and Medwave communicated with Mr. Morelli while he was in Illinois to negotiate his employment. Mr. Morelli performed substantially all of his duties for Medwave from its Illinois office located in Lincolnshire, Illinois. Katarow visited Illinois to conduct Medwave business with Mr. Morelli.

8. On February 14, 2007, Medwave and Mr. Morelli entered into an "Executive Severance Agreement" (The "Severance Agreement")  Mr. Katarow signed the Agreement on behalf of Medwave.

9. Medwave also executed retention agreements with other key employees and managers. The retention agreements stated if the key employees remain employed under specific terms, they would earn a severance bonus. Medwave informed Mr. Morelli that his Severance Agreement was intended to serve as a retention bonus.

10. The Severance Agreement provided that in order to encourage Mr. Morelli's continued attention and dedication to his duties, he would receive severance compensation under certain circumstances.

11. Mr. Morelli's primary duty was to actively seek strategic partners in the market place. Mr. Morelli assisted Medwave to enter into a transaction for the sale of either the stock or assets of the company, including direct interaction with the buyer.

12. In exchange for Mr. Morelli's continued attention and dedication to his duties, including negotiating the sale of Medwave's stock or assets, Medwave promised to pay him severance payments if his employment terminated after a "Change in Control" as defined in the Severance Agreement.

13. The Severance Agreement further provided that Medwave had an obligation to require any "Successor" to expressly agree to agree to honor the terms of the Severance Agreement to the same extent that the Company would be required if on such succession had taken place.

14. The Severance Agreement further provided at paragraph 5:

> In the event the Company terminates the Executive without Case in connection with (i) a determination by the Board of Directors to liquidate or dissolve the Company; (ii) a determination by the Board of Directors to consummate the sale of all or substantially all of the assets of the Company, then in each case the Company shall (A) continue to pay the Executive his base salary for a period of six months following the date of Executive's termination of employment, and (B) pay to the Executive, in a lump sum, 50% of the Executive's annual bonus to be paid for such year, at the time such bonus would otherwise have been paid or at the expiration of such 6 month period, whichever comes first. The determination of whether such termination is in connection with the above described events shall be made by the Board of Directors in good faith.

15. In approximately April, 2007, the Board of Directors directed Mr. Morelli to engage in discussions with CASMED regarding the sale of Medwave assets to CASMED. Mr. Katarow was also intimately involved in these discussions with CASMED. Mr. Morelli engaged in many of these discussions from Medwave's Lincolnshire, Illinois office.

16. During Medwave's discussions with CASMED, it became clear that the transaction would occur. Andrew Kersey, CASMED President and CEO, also informed Mr.

Morelli and Mr. Katarow that CASMED would not be employing Mr. Morelli after the close of the sale. As a result, Medwave would be responsible for paying Mr. Morelli more than $300,000.00 in severance compensation pursuant to Section 4 of the Severance Agreement ("the Severance Payment").

17. Mr. Katarow, however, informed Mr. Morelli that Medwave would not make the Severance Payment to him.

18. Mr. Katarow informed Mr. Morelli that he was concerned that if Medwave paid the Severance Payment, he would be subject to suits from Medwave shareholders.

19. Mr. Morelli informed Mr. Katarow that he expected the Severance Payment. Mr. Katorow responded by claiming that Mr. Morelli's demand for the Severance Payment was an impediment to closing the sale to CASMED. Mr. Katarow demanded that Mr. Morelli work out a deal whereby CASMED would employ Mr. Morelli after the close of the sale, thereby relieving Medwave of the obligation to make the Severance Payment to Mr. Morelli.

20. Mr. Morelli did obtain an agreement with CASMED to become its employee after its purchase of the MEDWAVE assets. CASMED, however, would not agree to honor the severance obligations Medwave made to Mr. Morelli. CASMED conditioned Mr. Morelli's employment on his ability to agree to a settlement with Medwave of his rights to Severance Payments. CASMED essentially asked Mr. Morelli to waive his rights under Paragraph 17 of the Severance Agreement which provided that Medwave had an obligation to require any "Successor" to expressly agree to agree to honor the terms of the Severance Agreement to the same extent that the Company would be required if on such succession had taken place.

21. In early July, 2007, Mr. Morelli informed Mr. Katarow that he was willing to negotiate his rights to severance and other rights under the Severance Agreement. Mr. Katarow responded by claiming Mr. Morelli was attempting to "F—K" him.

22. Thereafter, Mr. Katarow attempted to pressure Mr. Morelli to give up his rights to the Severance Payment. This pressure included offering Mr. Morelli a reduced severance payment, and continuing to reduce that offer every time Mr. Morelli asserted his rights under the Severance Agreement.

23. Upon information and belief, Mr. Katarow recommended to the Board of Directors that Medwave terminate Mr. Morelli's employment. Accordingly, on July 23, 2007, Mr. Katarow informed Mr. Morelli that the Medwave Board of Directors had terminated his employment, effective immediately.

24. Around the time of Mr. Morelli's termination, Mr. Katarow informed him that Medwave was no longer marketing product and new sales efforts would not be supported. Mr. Katarow also discussed Medwave's cash flow problems.

25. On or around the date of Mr. Morelli's termination, the Medwave Board of Directors decided to liquidate and dissolve the company.

26. Medwave has refused to pay to Mr. Morelli the severance payments due to him.

### COUNT I BREACH OF CONTRACT AGAINST MEDWAVE

27. Plaintiff repeats, realleges and incorporates herein paragraph 1-26 by reference as paragraphs 1-26 of this Count I

28. Plaintiff had a valid and enforceable agreement with Medwave

29. Plaintiff performed his duties and satisfied his obligations under that agreement

30. Medwave breached that agreement by refusing and continuing to refuse to pay Plaintiff six months of his base salary and his bonus as provided in Paragraph 5 of the Agreement. Pursuant to paragraph 5 of the Severance Agreement, Mr. Morelli's termination was in connection with the determination by the Board of Directors to consummate the sale of all or substantially all of the assets of the Company and/or in connection with a determination by the Board to liquidate Medwave.

31. Defendants' conduct further violated the covenant of good faith and fair dealing implied in every contract.

32. Defendants' conduct violated that duty by first stating its intent to refuse to honor its commitments to Plaintiff under the Agreement when it was apparent the sale of assets to CASMED would occur, by next pressuring Plaintiff to waive his rights under Section 17 of the Agreement, and by then terminating his employment.

WHEREFORE, Plaintiff respectfully prays that this Honorable Court award Plaintiff damages as follows:

a. Legal damages, including but not limited to wages, employment benefits, and other compensation;

b. Reasonable attorney's fees, costs, and expenses; and

c. Such other relief as the Court deems appropriate.

### COUNT II TORTIOUS INTERFERENCE WITH CONTRACT AND WITH PROSPECTIVE ECONOMIC ADVANTAGE AGAINST MR. KATAROW

33. Plaintiff repeats, realleges and incorporated herein by reference paragraphs 1-32 as paragraphs 1-32 of this Count II.

34. Plaintiff had a valid and enforceable Severance Agreement with Medwave of which Mr. Katarow was aware.

35. Plaintiff had a further expectation of continued employment with Medwave beyond July 23, 2007, and Mr. Katarow knew of that expectation.

36. Mr. Katarow interfered with Plaintiff's Severance Agreement with Medwave by deciding that Medwave would not honor the Agreement when it became clear that Plaintiff would be entitled to over $300.000 in Severance Payments.

37. Mr. Katarow interfered with Plaintiff's Agreement for reasons personal to him, among those, his belief that he would be personally subject to suits by Medwave shareholders if he allowed Plaintiff to obtain the Severance Payments.

38. Mr. Katarow interfered with Plaintiff's expectation of continued employment for reasons personal to him. Mr. Katarow had a personal vendetta against Plaintiff as a result of Plaintiff's assertion of his rights to Severance Payments. Mr. Katarow wanted to cause damage to Plaintiff by eliminating his livelihood and by refusing to pay any severance compensation.

WHEREFORE, Plaintiff respectfully prays that this Honorable Court award Plaintiff damages as follows:

    a. Legal damages, including but not limited to wages, employment benefits, and other compensation;

    b. Punitive damages;

    c. Equitable damages,

    d. Reasonable attorney's fees, costs, and expenses; and

    e. Such other relief as the Court deems appropriate.

By:/s/-------------------------------------
One of the Attorneys for Plaintiff
Rocco Morelli

David L. Miller (ARDC No. 6195953)
Dykema Gossett *pllc
10 S. Wacker Drive
Suite 2300
Chicago, Illinois 60606
(312) 876-1700

CHICAGO\2401449.1
ID\DLM